STATE OF CONNECTICUT *v.* JOHN McIVER
(12590)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued October 3—decision released December 16, 1986

*Stephen F. Cashman,* special public defender, for the appellant (defendant).

*Michael E. O'Hare,* assistant state's attorney, with whom, on the brief, were *Guy W. Wolf III,* assistant state's attorney, and *Karen G. Picker,* legal intern, for the appellee (state).

CALLAHAN, J. After a trial to a jury, the defendant was convicted of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), sexual assault in the first degree in violation of General Statutes § 53a-70 (a), and larceny in the sixth degree in violation of General Statutes § 53a-125b, as a lesser included offense of robbery in the third degree, General Statutes § 53a-136 (a). The defendant claims on appeal that: (1) the trial court erred in denying his

motion to dismiss on the basis of the warrantless arrest of the defendant; (2) the state failed to preserve potentially exculpatory evidence, thereby depriving the defendant of his right to due process of law; (3) the state refused to grant immunity to a defense witness who asserted her fifth amendment privilege against self-incrimination, thereby violating the defendant's constitutional rights to confrontation, compulsory process and the right to present a defense; and (4) he was deprived of effective assistance of counsel in violation of the sixth amendment.[1] We find no error.

The jury could reasonably have found the following facts: On December 30, 1983, at approximately 3 a.m., the defendant met the victim at the corner of Edgewood Avenue and Garden Street in New Haven. The victim, a prostitute, was sitting with three other women at the time. She asked the defendant if he knew where she could get some marihuana. The defendant replied that he did and offered to take the victim to a place where she could obtain it. During their conversation, the victim agreed to perform fellatio on the defendant in return for a specified sum of money. The defendant told her that they could go to his car, which he had parked in a nearby parking lot. Upon passing the lot, however, the victim became concerned and informed the defendant that she wished to go back. When she attempted to walk away, the defendant grabbed her from behind and told her that he would stab her if she screamed.

The defendant then forced the victim to continue walking with him to a four story house on Carlisle Street in New Haven. The defendant brought the victim to the back of the building and pushed her down a stairway into an empty room in the basement, where

---

[1] Another claim of error alleging a violation of the defendant's speedy trial right was withdrawn at oral argument.

he forced her to undress and lie on her coat. The defendant found $180 in the pocket of the victim's pants, which he took and placed in his own pocket. He then proceeded to assault the victim sexually. Thereafter, the defendant took the victim to an apartment on Davenport Avenue in New Haven. When the defendant fell asleep, the victim took the keys to the apartment and fled. She then encountered a police officer on the street and informed him that she had been sexually assaulted. Two other officers were dispatched to the scene, and the victim took them to the apartment on Davenport Avenue where she had left the defendant sleeping. The police found the defendant at the apartment along with some belongings of the victim. Both the victim and the defendant were transported to the police station where the defendant was placed under arrest.

I

We first address the defendant's claim that the trial court erred in denying his motion to dismiss. The defendant claimed in the trial court that his warrantless arrest was unconstitutional, and that under *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900 (1965), the charges against him should have been dismissed. The trial court denied the motion, and on appeal the defendant initially asserted the same claim under *State* v. *Licari.* Subsequent to the filing of the defendant's brief, we overruled *Licari* in *State* v. *Fleming,* 198 Conn. 255, 257–63, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986). In *State* v. *Ryerson,* 201 Conn. 333, 341, 514 A.2d 337 (1986), we held that *Fleming* is to be applied retroactively. Thereafter, the defendant filed a reply brief addressing the effect of *Fleming* and *Ryerson* on this case.

"In *State* v. *Fleming,* supra, 263, we held that '[w]here the fairness of a subsequent prosecution has

not been impaired by an illegal arrest, neither the federal nor the Connecticut constitution requires dismissal of the charges or a voiding of the resulting conviction.' An illegal arrest may impair the fairness of a subsequent prosecution only where *evidence* obtained as a direct consequence of that arrest is admitted against the defendant at trial. Id., 262; *State* v. *Federici,* 179 Conn. 46, 425 A.2d 916 (1979)." (Emphasis in original.) *State* v. *Ryerson,* supra, 338. In the present case, the defendant appears to argue that he was deprived of a fundamental constitutional right and a fair trial because statements obtained as a consequence of his unlawful arrest were admitted against him at trial. The defendant acknowledges, however, that he did not pursue a motion to suppress statements that he filed prior to trial, nor did he obtain a ruling from the trial court on this motion. Further, the defendant did not object to the admission of his statements at trial. He argues, for the first time in his reply brief, that despite these lapses he is entitled to a new trial, or, in the alternative, a remand to the trial court for an evidentiary hearing on his motion to suppress. We do not agree.

We have consistently held that only in the most exceptional circumstances will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973); see *State* v. *Fernandez,* 198 Conn. 1, 9–10, 501 A.2d 1195 (1985). Because the record in this case, however, adequately supports a claim that the defendant has been deprived of a fundamental constitutional right and a fair trial, we will review the defendant's claim of error. *State* v. *Evans,* supra, 70; see *State* v. *Marino,* 190 Conn. 639, 654–57, 462 A.2d 1021 (1983).

Without deciding whether there was probable cause to arrest the defendant, we find no merit to the defendant's claim because any possible error resulting from

the admission of the defendant's statements at trial was harmless beyond a reasonable doubt. See *State* v. *Marino,* supra, 655. There was overwhelming evidence that the defendant had been with the victim on the evening in question and that he had had sexual intercourse with her. The main issue at trial was whether the intercourse had been consensual. The defendant's statements, which were admitted through a police officer who interrogated him, served only to corroborate the defendant's version of the incident. Under the circumstances of this case, therefore, the admission of his statements was harmless beyond a reasonable doubt. *State* v. *Marino,* supra, 657; see *Aillon* v. *State,* 168 Conn. 541, 548, 363 A.2d 49 (1975).

## II

The defendant next argues that the trial court erred in denying both his motion to strike testimony concerning missing evidence and his request that the state be prevented from referring to missing evidence during its closing argument. We disagree.

During the attack on the victim, the defendant spread the victim's coat on the floor and ordered her to lie on it. He then proceeded to assault her sexually. Since the victim had been menstruating at the time of the assault, the coat became stained with blood. Detective Donna Amato of the New Haven police department observed the blood stains on the coat, but did not retain the coat as evidence. Thereafter the victim had the coat cleaned. During the trial, the victim and Amato testified that the victim's coat had contained blood and semen stains. This testimony was admitted without any objection by the defendant. On cross-examination of the victim, defense counsel questioned the victim extensively about having had the coat cleaned. These were the only references to the stains on the victim's coat that occurred in the presence of the jury. Prior to closing arguments,

the defendant moved to strike the testimony concerning the stains, and to have the court instruct the state not to emphasize the evidence in closing argument. The trial court denied the defendant's motion.

We noted in *State* v. *Asherman,* 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), that " '[t]he requirements of due process are met in the trial of a person accused of crime if he has been given the benefit of a fair and impartial trial in accordance with the settled course of judicial proceedings in this state.' *Wojculewicz* v. *Cummings,* 145 Conn. 11, 19, 138 A.2d 512, cert. denied, 356 U.S. 969, 78 S. Ct. 1010, 2 L. Ed. 2d 1075 (1958)." Whether testimony concerning the coat, without the coat itself being available, deprived the defendant of a fair trial depends upon the reason for its unavailability to the defense, the materiality of the missing evidence, the likelihood of mistaken interpretation of testimony about the coat by witnesses or the jury, and the prejudice to the defendant caused by its unavailability. *State* v. *Hamele,* 188 Conn. 372, 381, 449 A.2d 1020 (1982); *State* v. *Harden,* 175 Conn. 315, 326–27, 398 A.2d 1169 (1978).

Applying those factors to the present case, we conclude that the defendant was not deprived of his right to due process. There is no showing that the police acted in bad faith or maliciously in deciding not to retain the coat. *State* v. *Hamele,* supra, 382. Further, the police had no reason to believe that the coat contained exculpatory evidence. The stain on the coat was a blood stain that had been caused by the victim's menstrual bleeding. The defendant fails to show how any evidence of seminal stains on the coat, even if they existed, would have been material to his defense. Id. Admittedly, such evidence might be material in determining the identity of an assailant. Cf. *State* v. *Burns,* 173 Conn. 317, 325, 377 A.2d 1082 (1977). In this case, however, there was

no question that the defendant had engaged in sexual intercourse with the victim. The defendant does not address the likelihood of mistaken interpretation of the testimony by the jury. *State* v. *Hamele,* supra. Since, however, there was no dispute at trial that the defendant had had intercourse with the victim, the jury was not likely to have misinterpreted any reference to seminal stains on the coat. *United States* v. *Herndon,* 536 F.2d 1027, 1029 (5th Cir. 1976). Finally, the defendant has not made any showing that any test conducted on the coat would have produced exculpatory evidence. See *State* v. *Asherman,* supra, 725–26. The victim testified that she had had sexual relations with numerous men prior to the defendant's attack on her.

Under the circumstances, we find that the trial court did not err in (1) refusing to strike testimony concerning the missing evidence, or (2) denying the request to prevent reference to the coat during the state's closing arguments.

### III

The defendant next claims that the state's failure to grant immunity to a key defense witness deprived him of his constitutional right to a fair trial. At trial the defendant sought to call Margaret Erkard, the defendant's sister, as a witness for the defense. On direct examination, the witness asserted her fifth amendment privilege against self-incrimination as to any questions concerning her contact with the victim. The defendant then sought a grant of immunity for Erkard from the state's attorney, pursuant to General Statutes § 54-47a,[2] which was denied. The defendant argues on

---

[2] "[General Statutes] Sec. 54-47a. COMPELLING TESTIMONY OF WITNESS. IMMUNITY FROM PROSECUTION. (a) Whenever in the judgment of the chief state's attorney, a state's attorney or the deputy chief state's attorney, the testimony of any witness or the production of books, papers or other evidence of any witness, in any criminal proceeding involving narcotics, arson, bribery, gambling, election law violations, felonious crimes of vio-

appeal that the language of General Statutes § 54-47a should be construed broadly to include provisions for granting of immunity to witnesses for the defense, as well as recalcitrant witnesses for the prosecution. We are unpersuaded.

The defendant concedes, as he must, that this very same claim was rejected by this court in *State* v. *Simms,* 170 Conn. 206, 210–11, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976). As we stated in *State* v. *Simms,* supra, 211, "[a]s there is no other statutory authority granting immunity, and as § 54-47a does not apply to this case, the defendant has no source of authority for his position." *State* v. *McLucas,* 172 Conn. 542, 561, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977); see *State* v. *Yates,* 174 Conn. 16, 21, 381 A.2d

lence or any violation which is an offense under the provisions of title 25, before a court, grand jury of this state or, as provided in subsection (b) of section 54-47, a state referee, judge of the superior court or a three-judge panel of said court, is necessary to the public interest, the chief state's attorney, the state's attorney, or the deputy chief state's attorney, may, with notice to the witness, after the witness has claimed his privilege against self-incrimination, make application to the court for an order directing the witness to testify or produce evidence subject to the provisions of this section.

"(b) Upon the issuance of the order such witness shall not be excused from testifying or from producing books, papers or other evidence in such case or proceeding on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled to testify or produce evidence, and no testimony or evidence so compelled, and no evidence discovered as a result of or otherwise derived from testimony or evidence so compelled, may be used as evidence against him in any proceeding, except that no witness shall be immune from prosecution for perjury or contempt commited while giving such testimony or producing such evidence. Whenever evidence is objected to as inadmissible because it was discovered as a result of or otherwise derived from compelled testimony or evidence, the burden shall be upon the person offering the challenged evidence to establish a source independent of the compelled testimony or evidence."

536 (1977). The defendant has failed to cite any new authority to support a different interpretation of General Statutes § 54-47a, nor has he given any cogent reason for us to reconsider our prior interpretation of this statute.

The defendant also claims that the trial court erred in denying the defendant's motion to strike the testimony of his witness, Tanya Randolph.[3] Randolph testified concerning her relationship with the victim, and also stated in a nonresponsive answer that the victim "had called somebody about some money to drop the charges." After further questioning by defense counsel, Randolph testified that the victim had telephoned the defendant's sister to discuss the possibility of dropping the charges against the defendant in return for a sum of money. According to Randolph, the defendant's sister told the victim that she had no money to offer her. The defendant did not move to strike the testimony of Randolph at this time. Subsequently, the defendant called his sister, Margaret Erkard, to the stand, but, as previously noted, she refused to testify by asserting her fifth amendment privilege against self-incrimination. After the state refused to grant Erkard immunity pursuant to § 54-47a, the defendant moved to strike that portion of Randolph's testimony concerning the victim's phone call to Erkard. The trial court denied the motion and the defendant duly excepted.

---

[3] We note that this claim was not included in the defendant's preliminary statement of issues pursuant to Practice Book § 3012 (a). In the past, we have declined to address issues not properly presented to this court. *Robert S. Weiss & Co.* v. *Mullins,* 196 Conn. 614, 617, 495 A.2d 1006 (1985); *Presutti* v. *Presutti,* 181 Conn. 622, 625-26, 436 A.2d 299 (1980). Under the revised Practice Book § 3012 (a) (now § 4013) effective October 1, 1986, and made applicable to pending appeals by Practice Book § 4189 (formerly § 3166), the defendant's failure to identify this issue in his preliminary statement of issues does not preclude its review unless the state is prejudiced thereby. The state does not argue, nor do we feel, that it would be prejudiced by our review of this issue.

"It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimension, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985). The defendant argues that because Erkard did not testify, the only testimony concerning the phone conversation between the victim and Erkard that was before the jury was that given in a nonresponsive answer by Randolph. The defendant seems to argue that Randolph's testimony necessitated calling Erkard to testify on behalf of the defendant, and that the jury could have drawn an adverse inference from Erkard's failure to testify since they were unaware that she had asserted her fifth amendment privilege. These arguments, however, fail to establish that the trial court's denial of the motion to strike, even if erroneous, was harmful to the defendant. First, the defendant does not indicate how Randolph's testimony harmed him. If anything, it appears to be more prejudicial to the state's case than to the defendant's. Moreover, the trial judge specifically instructed the jury that it could draw no adverse inference from Erkard's failure to testify. We conclude, therefore, that the court's ruling was neither harmful nor prejudicial to the defendant. *State* v. *Vitale,* supra, 404; *State* v. *Shindell,* 195 Conn. 128, 141, 486 A.2d 637 (1985).

## IV

The defendant's final claim is that he was denied the effective assistance of counsel at his trial. Our decision in *State* v. *Leecan,* 198 Conn. 517, 542, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986), established the proper procedure regarding ineffective assistance of counsel claims. "[W]e shall not review at this time even the portion of the defendant's ineffective assistance claim that he contends is adequately supported by the record. Though we have

resolved his other claims of error, we believe that his ineffective assistance claim should be resolved, not in piecemeal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney whose conduct is in question may have an opportunity to testify." Id.; *State* v. *Casey,* 201 Conn. 174, 513 A.2d 1183 (1986).

There is no error.

In this opinion the other justices concurred.