## STATE OF CONNECTICUT *v.* DONALD SCOTT
## (6039)

DUPONT, C. J., SPALLONE and O'CONNELL, Js.

Argued May 3—decision released September 13, 1988

*James E. Mattern,* with whom was *Katherine Delisle,* for the appellant (defendant).

*Mitchell S. Brody,* deputy assistant state's attorney, with whom, on the brief, was *Thomas Nazzaro,* former assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, rendered after a conditional plea of nolo contendere,[1] of operating a motor vehicle while

---

[1] The defendant appeals pursuant to Practice Book § 4003 (b). Section 4003, which became effective October 1, 1986, provides: "APPEALS OF RULINGS ON MOTIONS TO DISMISS OR SUPPRESS FOLLOWING JUDGMENTS ENTERED UPON CONDITIONAL PLEAS OF NOLO CONTENDERE . . . . (b) With the approval of the court, after a hearing to consider any objections thereto, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any motion made prior to the close of evidence, which motion must be specified in such written reservation. If the defendant prevails on appeal, the judgment shall be set aside and the defendant shall be allowed to withdraw the conditional plea of nolo contendere after the case has been remanded to the trial court. The court shall not accept a plea of guilty or nolo contendere pursuant to this subsection where the adverse determination of the specified motion would not have a significant impact on the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere or guilty plea where the record available for review of the ruling upon the specified motion is inadequate for appellate review of the court's determination thereof."

General Statutes § 54-94a allows a defendant to enter a plea of nolo contendere conditional on the right to take an appeal from the trial court's denial of a motion to suppress evidence based on an unreasonable search and seizure or from the denial of a motion to dismiss. That section provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution." See also Practice Book § 4003 (a).

In this case, the grounds for the defendant's motion to suppress, namely, that the results of the breath alcohol tests were obtained without compliance with all applicable state statutory and regulatory requirements, and that the loss of the log book violated his federal constitutional right to due process of law under the fourteenth amendment, are "not included within the statutory language [of General Statutes § 54-94a] allowing appeals from

under the influence of intoxicating liquor in violation of General Statutes § 14-227a.[2] The defendant claims that the trial court erred (1) in denying his motion to suppress the results of a chemical breath test of his blood alcohol level, (2) in denying his motion to dismiss based on an alleged violation of the trial court's sequestration order depriving the defendant of his constitutional right to due process of law and statutory rights under General Statutes § 54-85a,[3] and (3) in sustaining the state's objection to the defendant's subpoena duces tecum. We find no reversible error.

This case involves the following facts. On December 20, 1985, Trooper Donald M. Barbour stopped an automobile driven by the defendant for suspicion of driving under the influence of alcohol. Barbour administered field sobriety tests to the defendant, which the defendant failed. Barbour placed the defendant under arrest at about 12:40 a.m. The defendant was then placed in the passenger side of a police vehicle and transported to the police station.

At the police barracks, Barbour tested the defendant's blood alcohol level with a breathalyzer device

---

. . . an illegal search or seizure in violation of the fourth amendment. See *State* v. *Madera,* [198 Conn. 92, 99, 503 A.2d 136 (1985)]." *State* v. *Chung,* 202 Conn. 39, 43, 519 A.2d 1175 (1987). Jurisdiction arises, however, from the rule of practice. Practice Book § 4003 (b). See general principles of jurisdiction set forth in *Szarwak* v. *Warden,* 167 Conn. 10, 37, 355 A.2d 49 (1974); *State* v. *Clemente,* 166 Conn. 501, 514, 353 A.2d 723 (1974); *In re Appeal of Dattilo,* 136 Conn. 488, 492, 72 A.2d 50 (1950); *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 142, 32 A.2d 547 (1943).

[2] The appeal in this case and the appeals in *State* v. *Desso,* 16 Conn. App. 165, 547 A.2d 74 (1988), and *State* v. *Smith,* 16 Conn. App. 156, 547 A.2d 69 (1988), were argued together in this court. Separate briefs were filed in each case.

[3] "[General Statutes] Sec. 54-85a. SEQUESTERING OF WITNESSES IN CRIMINAL PROSECUTION. In any criminal prosecution, the court, upon motion of the state or the defendant, shall cause any witness to be sequestered during the hearing on any issue or motion or any part of the trial of such prosecution in which he is not testifying."

known as an intoximeter. The first test was administered at 1:15 a.m., yielding a blood alcohol ratio of .199. A second test was given to the defendant at 1:53 a.m., yielding a blood alcohol ratio of .184. Both of these ratios indicated blood alcohol levels above the legal limit set forth in General Statutes § 14-227a (a) (2).[4] Barbour checked the intoximeter's accuracy before and after each test. These checks indicated that the calibrations were accurate and that the intoximeter was functioning properly.

Barbour placed the printouts of the checks on the intoximeter's accuracy together with the measurements of the defendant's blood alcohol level in a log book kept in the police barracks, and mailed copies of the same to the defendant. On April 19, 1986, the log book was discovered to be missing. It had not been located by the time of the hearing on the defendant's motion to suppress the results of the breath alcohol tests.

I

In his first claim of error, the defendant argues that the trial court erred in denying his motion to suppress the results of the breathalyzer tests (1) because the instrument was not checked for accuracy at the beginning of each day of use in accordance with General Statutes § 14-227a (c) (4),[5] or at the beginning of each shift

[4] General Statutes § 14-227a (a) provides in pertinent part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor . . . . A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor . . . if he operates a motor vehicle . . . (2) while the ratio of alcohol in the blood of such person is ten-hundreths of one per cent or more of alcohol, by weight."

[5] General Statutes § 14-227a (c) provides in pertinent part: "[I]n any criminal prosecution for the violation of [§ 14-227a (a)] . . . evidence respecting the amount of alcohol . . . in the defendant's blood . . . at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath . . . shall be admissible and competent provided: . . . (4) the

in accordance with the department of health services regulations; Regs., Conn. State Agencies §§ 14-227a-8 (d)[6] and 14-227a-10;[7] and (2) because the defendant was not under "continuous observation" for at least fifteen minutes prior to the collection of the breath samples in accordance with the department of health services regulations. Regs., Conn. State Agencies § 14-227a-10 (b) (1) (A).[8] These issues of statutory and regulatory interpretation have been fully addressed in the companion case of *State* v. *Smith,* 16 Conn. App. 156, 547 A.2d 69 (1988).

In *State* v. *Smith,* supra, 163, we held that a check of the intoximeter's accuracy prior to the subject test, as opposed to the beginning of each day of use or shift, complies with the requirements for admissibility set forth in the statute and regulations. Further, the trial court found that "as far as humanly possible the trooper kept the defendant under continuous observation for the requisite period." That finding is supported by the record, and is all that is required under the regulations.

device used for such test was checked for accuracy at the beginning of each workday and no later than the end of each workday by a person certified by the department of health services . . . ." This statute has been amended and now provides in pertinent part: "[E]vidence respecting the amount of alcohol . . . in the defendant's breath . . . shall be admissible and competent provided . . . the device used for such test was checked for accuracy immediately before and after such test was performed." Public Acts 1988, No. 88-85.

[6] Regs., Conn. State Agencies § 14-227a-8 (d) provides: "After initial certification the instrument shall be checked for accuracy at the beginning of each day of use or departmental shift and sometime before the end of each day or shift by a person certified by the department of health services."

[7] Regs., Conn. State Agencies § 14-227a-10 provides in pertinent part: "[T]he operator . . . shall check the instrument for accuracy at the beginning and no later than the end of each workday or shift."

[8] Regs., Conn. State Agencies § 14-227a-10 (b) (1) (A) provides that the "breath sample shall be collected only after the subject has been under continuous observation for at least fifteen minutes prior to the collection of each sample. During this observation period the subject must not have ingested any alcoholic beverages or food, regurgitated, or smoked."

*State* v. *Smith,* supra. The trial court did not err in denying the defendant's motion to suppress on those grounds.

## II

The defendant next claims that the trial court erred in denying his motion to suppress because the loss of the log book, which contained a copy of his test results and accuracy determinations of the intoximeter, violated his constitutional right to due process under the fourteenth amendment to the federal constitution. We disagree.

The state acknowledges the loss of the log book. The maintenance of a log book is required by the department of health services regulations. Regs., Conn. State Agencies § 14-227a-10 (b) (2) (B).[9] The defendant does not argue that the violation of the regulation constituted sufficient support for his motion to suppress the results of the breath alcohol tests. Cf. *State* v. *Williamson,* 14 Conn. App. 108, 552 A.2d 815 (1988). The defendant argues, rather, that the alleged violation of his constitutional rights constituted sufficient support for his motion to suppress. We note in the first instance that a prosecutor has a constitutional duty to disclose exculpatory evidence which is known to the prosecution but unknown to the defense. *Brady* v. *Maryland,* 373 U.S. 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). It is apparent that this case does not involve the unintentional loss or nondisclosure of *Brady* material but, at most, involves the loss or nondisclosure of potentially exculpatory material. This is also so because the defendant had received copies of the printouts of

[9] Regs., Conn. State Agencies § 14-227a-10 (b) (2) (B) provides in pertinent part: "A single current log book for the instrument shall be maintained in which the frequency of determination of accuracy of the instrument and the identity of the person performing the determination of such accuracy are given. . . . All test results of each subject's analysis and calibration shall be recorded in the log book maintained by the police agency."

the checks on the intoximeter's accuracy and a copy of the measurements of his blood alcohol level by mail, which were items recorded in the log book.

The seminal case regarding a state's constitutional duty to preserve potentially exculpatory evidence is *California* v. *Trombetta,* 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984) (state's failure to preserve a defendant's breath alcohol sample does not violate the federal constitution).[10] *Trombetta* held that the failure to preserve potentially exculpatory evidence does not result in a violation of the constitution unless such failure deprives a defendant of "a meaningful opportunity to present a complete defense." Id., 485. *Trombetta* delineated two inquiries for discerning whether a defendant has had "a meaningful opportunity to present a complete defense." The first inquiry is whether the authorities were "acting 'in good faith and in accord with their normal practices.' " Id., 488, quoting *Killian* v. *United States,* 368 U.S. 231, 242, 82 S. Ct. 302, 7 L. Ed. 2d 256 (1961). The second inquiry is whether the evidence was material in that it (a) "possess[es] an exculpatory value that was apparent before the evidence was destroyed [and (b) is of] such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California* v. *Trombetta,* supra, 489; see also *Chaussard* v. *Fulcomer,* 816 F.2d 925, 931–32 (3d Cir. 1987), cert. denied, 484 U.S. 845, 108 S. Ct. 139, 98 L. Ed. 2d 96 (1987) (loss of a tape recording did not constitute material evidence and therefore its absence did not result in a due process violation).

As to the good faith element of the *Trombetta* standard, the trial court found no evidence showing that

[10] Prior to *Trombetta,* the United States Supreme Court had "never squarely addressed the government's duty to take affirmative steps to preserve evidence on behalf of criminal defendants." *California* v. *Trombetta,* 467 U.S. 479, 486, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984).

the log book was purposely lost, or destroyed intentionally. "The record contains no allegation of official animus towards [the defendant and indicates] no conscious effort to suppress exculpatory evidence." *California v. Trombetta*, supra, 488. Accordingly, the first *Trombetta* inquiry is satisfied in this case.

As to the materiality elements of the *Trombetta* standard, we conclude that the second inquiry is also satisfied in this case. First, the defendant cannot demonstrate that the log book's exculpatory value was "apparent before the evidence was destroyed." Id., 489. The defendant speculates that had the missing log book showed that the machine used to sample the defendant's blood alcohol level previously malfunctioned and was not subsequently calibrated, an accuracy reading prior to the taking of the defendant's breath sample may have been "tainted." We find such speculation to be unsupported by the record. The evidence indicates that the machine used to test the defendant's blood alcohol level was in fact tested for accuracy and calibrated by Barbour immediately prior to and following each breath test. The log book's exculpatory value was therefore not "apparent" to the authorities when it was lost.

Second, the evidence is not "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. The defendant had comparable evidence available, in addition to the log book, by which to impeach the accuracy capabilities of the intoximeter used to sample his blood alcohol level. General Statutes § 14-227a (c) (2) requires that "a true copy of the report of the test result [be] mailed to or personally delivered to the defendant within twenty-four hours or by the end of the next regular business day" in order for the test results to be admitted into evidence. The record indicates that the defendant received a copy of the test results that contained the two determinations of the defendant's blood

alcohol content, and numerical indications that the machine had been checked for accuracy. This copy was admitted into evidence at the suppression hearing. Because the record indicates that the log book contained an identical copy of the foregoing information, the fact that it was missing did not deprive the defendant of comparable evidence. Furthermore, the copy contained in the missing log book, identical to that received by the defendant, was inculpatory in that it demonstrated that the instrument was calibrated, accurate at the time the defendant was tested, and that the defendant's blood alcohol level was above the legal limit. The regulations require no more information to be recorded in the missing log book; see footnote 9, supra; than that shown by the copy of the test results admitted into evidence at the suppression hearing. The defendant was not foreclosed from calling upon expert testimony to impeach the intoximeter results. The defendant could have obtained "comparable evidence by other reasonably available means." *California* v. *Trombetta,* supra.

The defendant claims, however, that he was deprived of an opportunity to obtain additional, comparable evidence because the trial court sustained the state's objection to the production of certain items enumerated in his subpoena duces tecum. The items requested were copies of the manufacturer's operational instructions for the intoximeter, copies of all recertifications from October 8, 1985, through March 4, 1986, on the machine which was used to sample the defendant's breath and copies of all repair or recalibration orders for the intoximeter.

This claim is subsumed under *Trombetta's* materiality inquiry. The defendant requested a copy of the manufacturer's operational instructions for the intoximeter. This evidence does not have any apparent exculpatory value with respect to impeaching the accuracy

of the machine, and is reasonably available elsewhere. The defendant also requested evidence of the recertification and repair or recalibration orders for the machine used to sample the defendant's blood alcohol level. Although this evidence may have shown that the machine had malfunctioned in the past, the undisputed evidence admitted at the suppression hearing demonstrated that the machine was accurate on the day that the defendant's breath samples were taken. Even if there had been evidence that the machine malfunctioned previously, that evidence does not have apparent exculpatory value with respect to impeaching the defendant's blood alcohol tests. Accordingly, the trial court did not err in denying the defendant's subpoena duces tecum.[11]

### III

The defendant claims that the trial court erred in denying his motion to dismiss by failing to find a violation of the court's sequestration order which allegedly deprived the defendant of his constitutional right to due process and statutory rights under General Statutes § 54-85a.

This issue involves the following facts. The hearing on the defendant's motion to dismiss was conducted on two different days. On the first day, after Trooper Barbour had testified, the trial court ordered him not to discuss his testimony with Trooper Steven Fields, who was scheduled to appear as a witness at the later date. Prior to the commencement of the continued hearing on the defendant's motion to suppress, the defendant's attorney had observed Barbour and Fields talking with the prosecutor. The defendant subsequently

---

[11] The trial court denied the defendant's subpoena duces tecum on relevancy grounds. Although the items requested by the defendant were relevant to the issues concerning the defendant's motion to suppress, they were not material under *California* v. *Trombetta,* 467 U.S. 479, 489, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984).

moved to dismiss the charges against him on the ground that the trial court's sequestration order had been violated. The prosecutor denied that Barbour's prior testimony had been discussed. The prosecutor represented that he had told Fields to expect to be called as a rebuttal witness and informed the troopers that the hearing would likely conclude on that day. The defendant acknowledged that he did not know what the prosecutor and the troopers discussed. The trial court denied the defendant's motion to dismiss and Fields was allowed to testify.

Sequestration orders may be implemented by statute; General Statutes § 54-85a; or by an order of the court which may impose a broader prohibition than that provided by the sequestration statute. *State* v. *Williams,* 169 Conn. 322, 331, 363 A.2d 72 (1975). The "primary concern [is] the 'fairness of the trial, not the culpability of the prosecution.' " *State* v. *Falby,* 187 Conn. 6, 27, 444 A.2d 213 (1982), quoting *Smith* v. *Philips,* 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). The defendant urges this court to adopt a rule holding that a conference among a state's attorney and witnesses subject to a sequestration order constitutes a per se violation of that order. This we decline to do.

The "obvious purpose of sequestering a witness . . . is to prevent the one sequestered from shaping his testimony to corroborate falsely the testimony of the other." *State* v. *Pikul,* 150 Conn. 195, 200, 187 A.2d 442 (1962). A per se rule would prevent inquiry into whether the underlying purpose of the sequestration order had been served. That purpose primarily ensures that the defendant will receive a fair trial. An inquiry into the facts and circumstances of each case is necessary to ascertain whether the purpose of a sequestration order has been thwarted.

We deem it necessary, therefore, to examine the testimony of Fields, which took place after the alleged violation of the sequestration order, for evidence of possible complicity. There is no indication that Fields fabricated his testimony to comport with that of Barbour. Fields' testimony concerned his signature on the defendant's consent form, the validity of which is not at issue in this case. In addition, the substance of Fields' testimony indicated that he did not recall much about what took place that evening, whereas Barbour's testimony focused on the events surrounding the defendant's arrest in great detail. Any consistency in the testimony of the troopers is wholly explainable by reference to other factors such as standard police operating procedures. See, e.g., *State* v. *Sullivan,* 11 Conn. App. 80, 85, 525 A.2d 1353 (1987).

Moreover, the defendant had the opportunity to question Fields to expose any potential taint resulting from the conference between the state's attorney and the troopers since Fields took the stand after the alleged violation of the sequestration order. "The failure of trial counsel to attempt . . . to show any harm that may have flowed from the violation of the sequestration order is strong evidence that he did not deem it to be prejudicial." Id., 86. We conclude, accordingly, that any violation of the court's sequestration order did not deprive the defendant of his constitutional or statutory rights.

There is no error.

In this opinion the other judges concurred.