## STATE OF CONNECTICUT *v.* RICHARD SMITH
## (6240)

DUPONT, C. J., SPALLONE and O'CONNELL, Js.

Argued May 3—decision released September 13, 1988

*Katherine M. Delisle,* with whom, on the brief, was
*James Mattern,* for the appellant (defendant).

*Mary H. Lesser,* deputy assistant state's attorney, with whom, on the brief, was *Philip Scarpellino,* deputy assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from a judgment of conviction, rendered upon his conditional plea of nolo contendere,[1] of operating a motor vehicle while

---

[1] The defendant appeals pursuant to Practice Book § 4003 (b). Section 4003, which became effective October 1, 1986, provides in pertinent part: "APPEALS OF RULINGS ON MOTIONS TO DISMISS OR SUPPRESS FOLLOWING JUDGMENTS ENTERED UPON CONDITIONAL PLEAS OF NOLO CONTENDERE . . . . (b) With the approval of the court, after a hearing to consider any objections thereto, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any motion made prior to the close of evidence, which motion must be specified in such written reservation. If the defendant prevails on appeal, the judgment shall be set aside and the defendant shall be allowed to withdraw the conditional plea of nolo contendere after the case has been remanded to the trial court. The court shall not accept a plea of guilty or nolo contendere pursuant to this subsection where the adverse determination of the specified motion would not have a significant impact on the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere or guilty plea where the record available for review of the ruling upon the specified motion is inadequate for appellate review of the court's determination thereof."

General Statutes § 54-94a allows a defendant to enter a plea of nolo contendere conditional on the right to take an appeal from the trial court's denial of a motion to suppress evidence based on an unreasonable search and seizure or from the denial of a motion to dismiss. That section provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution." See also Practice Book § 4003 (a).

In this case, the ground for the defendant's motion to suppress, namely, that the results of the breath alcohol tests were obtained without compliance with all applicable state statutory and regulatory requirements, "is not included within the statutory language [of General Statutes § 54-94a] allowing appeals from an illegal search or seizure in violation of the fourth

under the influence of intoxicating liquor in violation of General Statutes § 14-227a.[2] The defendant claims that the trial court erred in denying his motion to suppress the results of breath tests administered at the time of his arrest. We find no error.

Certain facts are pertinent. On December 31, 1986, Officer Adam Stuart of the Old Saybrook police department stopped the defendant after observing him operating his vehicle in an erratic manner. Stuart observed that the defendant showed signs of intoxication and administered a roadside sobriety test. The roadside sobriety test confirmed Stuart's suspicions of intoxication, and the defendant was placed under arrest at approximately 11 p.m.

The defendant was then transported, handcuffed and in the rear of the police cruiser, to the Old Saybrook police headquarters. Upon arrival, the defendant was brought by Stuart into a room where a breathtesting device, known as an intoximeter, was located. An intoximeter tests the level of a subject's blood alcohol content by breath analysis. At this time, Stuart checked the calibration of the intoximeter for accuracy and found it to be outside acceptable limits. As a result of the malfunction, Stuart did not use that intoximeter to measure the defendant's blood alcohol level.

The defendant was then placed in the rear of a police cruiser and transported to the state police barracks in

amendment. See *State* v. *Madera,* [198 Conn. 92, 99, 503 A.2d 136 (1985)]." *State* v. *Chung,* 202 Conn. 39, 43, 519 A.2d 1175 (1987). Jurisdiction arises, however, from the rule of practice. Practice Book § 4003 (b). See general principles of jurisdiction set forth in *Szarwak* v. *Warden,* 167 Conn. 10, 37, 355 A.2d 49 (1974); *State* v. *Clemente,* 166 Conn. 501, 514, 353 A.2d 723 (1974); *In re Appeal of Dattilo,* 136 Conn. 488, 492, 72 A.2d 50 (1950); *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 142, 32 A.2d 547 (1943).

[2] The appeal in this case and the appeals in *State* v. *Scott,* 16 Conn. App. 172, 547 A.2d 77 (1988), and *State* v. *Desso,* 16 Conn. App. 165, 547 A.2d 74 (1988), were argued together in this court. Separate briefs were filed in each appeal.

Westbrook. Stuart tested the intoximeter located there and found its accuracy to be within an acceptable range. The first intoximeter test was administered to the defendant at 11:25 p.m., and showed the defendant's blood alcohol content to be above the allowable limit set forth in General Statutes § 14-227a (a) (2).[3]

Following this first intoximeter test, Stuart processed the necessary paperwork, during which time the defendant remained in the presence of the officer. At 11:57 p.m., a second intoximeter test was performed on the defendant. That test also showed the defendant's blood alcohol level to be above the allowable limit. After administering the second breath test, Stuart, once again, tested the intoximeter for accuracy, and concluded that the intoximeter readings were accurate.

The defendant claims that the trial court erred in denying his motion to suppress because (1) the accuracy tests performed by Stuart did not comply with either the requirements of General Statutes § 14-227a (c) (4) or §§ 14-227a-8 (d) and 14-227a-10 of the Regulations of Connecticut State Agencies applicable to the department of health services, and (2) because he was not under continuous observation for the fifteen minute period prior to the administration of each intoximeter test as required by § 14-227a-10 (b) (1) (A) of those regulations.

The issue to be resolved is whether the results of the tests were obtained in compliance with the governing statutory and regulatory requirements for insuring that such tests are accurate.

---

[3] General Statutes § 14-227a provides in pertinent part: "(a) OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor . . . if he operates a motor vehicle . . . (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one percent or more of alcohol, by weight."

General Statutes § 14-227a (c) sets forth six elements which must be satisfied for the admissibility of the results of chemical analysis tests of a defendant's blood, breath or urine in a criminal prosecution for violation of § 14-227a (a) or (b).[4] The defendant's challenge relates to the fourth element, which provides that chemical analysis results are inadmissible unless the testing device was tested for accuracy "at the beginning of each workday and no later than the end of each workday by a person certified by the department of health ser-

[4] General Statutes § 14-227a (c) provides: "ADMISSIBILITY OF CHEMICAL ANALYSIS. Except as provided in subsection (d) of this section, in any criminal prosecution for violation of subsection (a) or (b) of this section, evidence respecting the amount of alcohol or drug in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath, blood or urine shall be admissible and competent provided: (1) The defendant was afforded a reasonable opportunity to telephone an attorney prior to the performance of the test and consented to the taking of the test upon which such analysis is made; (2) a true copy of the report of the test result was mailed to or personally delivered to the defendant within twenty-four hours or by the end of the next regular business day, after such result was known, whichever is later; (3) the test was performed by or at the direction of a police officer according to methods and with equipment approved by the department of health services and was performed by a person certified or recertified for such purpose by said department or recertified by persons certified as instructors by the commissioner of health services. If a blood test is taken, it shall be on a blood sample taken by a person licensed to practice medicine and surgery in this state, a qualified laboratory technician, an emergency medical technician II or a registered nurse; (4) the device used for such test was checked for accuracy at the beginning of each workday and no later than the end of each workday by a person certified by the department of health services; (5) an additional chemical test of the same type was performed at least thirty minutes after the initial test was performed, provided however the results of the initial test shall not be inadmissible under this subsection if reasonable efforts were made to have such additional test performed in accordance with the conditions set forth in this subsection and such additional test was not performed or was not performed within a reasonable time, or the results of such additional test are not admissible for failure to meet a condition set forth in this subsection; and (6) evidence is presented which demonstrates that the test results and the analysis thereof accurately reflect the blood alcohol content at the time of the alleged offense."

vices." General Statutes § 14-227a (c) (4). The requirements of testing set forth in the department of health services regulations §§ 14-227a-8 (d) and 14-227a-10 are essentially identical to the mandates set forth in General Statutes § 14-227a (c) (4), in that they both require that the alcohol testing device be checked for accuracy by a certified operator at the beginning and no later than the end of the workday or shift.[5]

It is uncontested that Stuart was certified as an operator of the intoximeter at the time of the defendant's breath tests. The defendant argues that, given the penal nature of General Statutes § 14-227a, the requirement that accuracy tests be performed at the beginning and before the end of the workday or shift must be strictly and literally construed. The defendant contends that because the accuracy tests were performed immediately before and after the breath analysis tests, a manner not expressly authorized by statute, the breath analysis results should have been suppressed.

The state concedes that the intoximeter used to take the defendant's breath sample was not checked for accuracy at the beginning of the workday or shift. In denying the defendant's motion to suppress, the trial court found, however, that the procedure used by Stuart, namely, checking the intoximeter for accuracy immediately before and after the defendant's breath tests, achieved greater accuracy than that required by the statute and regulations and, thus, was in total compliance with them. We agree with the trial court's conclusion.

---

[5] Regs., Conn. State Agencies § 14-227a-8 (d) provides in pertinent part: "After initial certification the instrument shall be checked for accuracy at the beginning of each day of use or departmental shift and sometime before the end of each day or shift by a person certified by the department of health services." Section § 14-227a-10 of those regulations provides in pertinent part: "Such operator . . . shall check the instrument for accuracy at the beginning and no later than the end of each workday or shift."

In interpreting the meaning and requirements of a statute or regulation, we rely on the traditional rules of statutory construction. *Mitchell* v. *Mitchell,* 194 Conn. 312, 320, 481 A.2d 31 (1984). It is a fundamental principle of construction that a statute such as § 14-227a, which imposes criminal liability, is to be strictly construed. *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983). The rule of strict construction, however, does not require that the most narrow, technical and exact meaning be given to the language of a statute in frustration of an obvious legislative intent. Id. The application of common sense to the language of a penal statute should not be excluded so as to result in absurdity or frustration of the evident design of the legislature. *State* v. *Waterman,* 7 Conn. App. 326, 334, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986).

It is evident from the language of General Statutes § 14-227a that the purpose of testing the intoximeter for accuracy is to ensure that the device reliably reflects the actual blood alcohol level of the subject tested. This purpose is implemented by §§ 14-227a-8 (d) and 14-227a-10 of the Regulations of Connecticut State Agencies.

An accuracy test performed at the beginning of the workday or shift, hours before a subject test is performed, raises the possibility that the intoximeter has malfunctioned during the period between the accuracy test and the subject test. It is evident that the closer the temporal proximity between the subject test and the accuracy check, the greater the reliability of the subject test. See 2 R. Erwin, Defense of Drunk Driving Cases (3d Ed.) § 22.04 (3) (h), p. 22–35 (verification of instrument accuracy should be performed for each set of subject tests); cf. *State* v. *Hancich,* 200 Conn. 615, 623–24, 513 A.2d 638 (1986) (where intoximeter is checked for accuracy immediately before adminis-

tering test to a subject, evidence of the test results is admissible under General Statutes § 14-227a (c) (6), which mandates that such evidence demonstrate "that the test results . . . accurately reflect the blood alcohol content at the time of the alleged offense").

General Statutes § 14-227a (c) (4) and the accompanying regulations provide a minimum standard of accuracy testing in order to admit the test results of a device into evidence against a defendant in a criminal prosecution. The accuracy requirement provides a safeguard against inaccurate or unreliable results being used against a defendant. It would be anomalous to hold the intoximeter results in this case inadmissible because the device was tested for accuracy closer in time to the defendant's actual breath test than is required by the statute or regulations. Testing the intoximeter immediately before and after the defendant's breath tests is a more rigorous accuracy procedure than is required by law and therefore constitutes compliance with the statute and regulations.[6]

The defendant also claims that the breath analysis results should have been suppressed because he was not under "continuous observation" for at least fifteen minutes prior to each of the breath analysis tests, as required by the department of health services regulations; Regs., Conn. State Agencies § 14-227a-10 (b) (1) (A). That regulation provides that "the breath sample shall be collected only after the subject has been under continuous observation for at least fifteen minutes prior to the collection of each sample. During this observation period, the subject must not have ingested any alcoholic beverages or food, regurgitated or smoked." Id.

---

[6] We note that a recent amendment to General Statutes § 14-227a (c) (4), effective October 1, 1988, requires accuracy testing to be performed "immediately before and after such test was performed by a person certified by the department of health services." See Public Acts 1988, No. 88-85.

The defendant was arrested at approximately 11 p.m. The first breath test was performed at 11:25 p.m., and the second test was performed at 11:57 p.m. The defendant does not contest the fact that at least fifteen minutes had elapsed prior to each test. The defendant argues, rather, that during those periods he was not "under continuous observation" as required by the regulation. Specifically, the defendant contends that during the observation period, when Stuart was operating the police cruiser, preparing the intoximeter for use, and processing the paperwork, the defendant could not have been "under continuous observation."

The language of § 14-227a-10 (b) (1) (A) of the regulations, which requires "continuous observation," must be interpreted with reference to the purpose of the regulation. See *State* v. *Roque,* supra, 151. The regulation, read in its entirety, indicates that the purpose is to determine whether the subject to be tested has ingested food, beverages, regurgitated or smoked. These activities adversely affect the accuracy of alcohol breath analysis. See 2 R. Erwin, supra, § 22.05 (4) (a), p. 22-42.18 (64). They are activities which do not require observation without cessation in order to determine if they have occurred.

During the hearing on the defendant's motion to suppress, Stuart testified that at all times prior to the administration of the breath analysis, the defendant was in his presence. Stuart further testified that he was able to determine that the defendant had not engaged in any of the behaviors prohibited by the regulation.

In light of the regulation's purpose, we do not interpret § 14-227a-10 (b) (1) (A) to require that an officer fix his unswerving gaze upon a subject during each fifteen minute interval prior to administration of a breath test. Such an interpretation would not only be practically impossible to perform but would allow a subject

to thwart compliance with the regulation simply by turning his head away from the observing officer. Where, as here, evidence shows that a defendant was in an officer's presence for at least a period of fifteen minutes and that the defendant did not ingest food or beverages, regurgitate or smoke, the requirement of "continuous observation" under § 14-227a-10 (b) (1) (A) has been complied with. Accordingly, the trial court did not err in denying the defendant's motion to suppress the results of the breath analysis tests.

There is no error.

In this opinion the other judges concurred.