STATE OF CONNECTICUT *v*. LYMAN E. DESSO
(5595)

DUPONT, C. J., SPALLONE and O'CONNELL, JS.

Argued May 3—decision released September 13, 1988

*Glenn E. Coe,* with whom, on the brief, was *Mary Alice Moore,* for the appellant (defendant).

*Geoffrey Marion,* deputy assistant state's attorney, with whom, on the brief, was *Robert Britt,* deputy assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a.[1] The defendant claims that he was denied a fair trial (1) because evidence of an intoximeter test result was admitted, (2) because the trial court failed to charge the jury as to the statutory and regulatory requirements relating to the intoximeter test, and (3) because the trial court failed to excuse three prospective jurors for cause.

The evidence at trial was that a state police officer stopped the defendant's car after the officer had observed an erratic operation of the car. The officer smelled alcohol on the defendant's breath, and noted that the defendant's eyes were bloodshot and that his speech was slurred. On the basis of these observations and on the results of a roadside sobriety test, the officer placed the defendant under arrest. The defendant was taken to a state police barracks where an intoximeter breath test was administered to him about one hour after he had been stopped. The test measured his blood alcohol level at .191, a level above the legal alcohol limit set forth in General Statutes § 14-227a (a) (2).

---

[1] The appeal in this case and the appeals in *State* v. *Scott,* 16 Conn. App. 172, 547 A.2d 77 (1988), and *State* v. *Smith,* 16 Conn. App. 156, 547 A.2d 69 (1988), were argued together in this court. Separate briefs, however, were filed in each appeal.

During the fifteen minutes prior to the test, the officer gave a similar breath test to another person who also had been arrested.

## I

The defendant moved to suppress the intoximeter test results, contending that there had not been compliance with the regulations of the department of health services issued pursuant to General Statutes § 14-227a (e) or with the requirement of General Statutes § 14-227a (c) governing the admissibility of blood alcohol test results. The regulations are contained in § 14-227a-10 of the Regulations of Connecticut State Agencies. The trial court denied the motion. The defendant characterizes this issue, in his brief, as his "primary claim of error."

There are six preconditions to the admissiblity of breathalizer tests. General Statutes § 14-227a (c) (1) through (6). The preconditions were met here. See *State v. Smith,* 16 Conn. App. 156, 547 A.2d 69 (1988). The defendant, contends, however, that in addition to the statutory preconditions, the state was also obligated to prove compliance with the regulations.[2] Even if the state had the burden to prove such compliance, it satisfied that requirement.[3]

---

[2] The defendant also claims that he had the right to introduce the regulations into evidence. The trial court took judicial notice of the regulations and they were marked for identification. Since regulations adopted pursuant to a legislative command have the force of law; *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 497, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); it is no more necessary that a court admit regulations as full exhibits into evidence than it would be necessary for a court to admit statutes as full exhibits into evidence.

[3] General Statutes § 14-227a provides that no test shall be admitted into evidence unless the test was performed "according to methods and with equipment approved by the department of health services" and that the commissioner of health services "shall adopt regulations governing the conduct of chemical tests, the operation and use of chemical test devices and

The defendant argues that the regulations were not complied with because the operator of the test had not had the four hours of training necessary for certification; Regs., Conn. State Agencies § 14-227a-10 (c) (a) (ii); and because the operator of the test had not placed the defendant under "continuous observation" prior to the testing of the defendant. Regs., Conn. State Agencies § 14-227a-10 (b) (1) (A). The officer who administered the test testified that he had undergone training for certification in excess of the four hour minimum. The same witness also produced copies of his original certification and his recertification. He further testified that he kept the defendant in his sight for sixty minutes prior to the test and did not see him ingest any alcoholic beverages or food, or see him regurgitate or smoke, and that he would have noticed if the defendant had done so. We decided in *State* v. *Smith,* supra, 164, that "continuous observation" as used in regulation § 14-227a-10 (b) (1) (A) does not require observation without cessation. The trial court properly admitted the intoximeter test results.

## II

The defendant's next claim of error is that the trial court should have charged the jury on the statutory and regulatory requirements of the intoximeter test so that

the training, certification and annual recertification of operators of such devices as he finds necessary to protect the health and safety of persons who submit to chemical tests and to insure reasonable accuracy in testing results." Since regulations must be adopted and the test administered with approved methods, the state must demonstrate to the satisfaction of the trial court that the regulations were followed as a precondition to the admissibility of a chemical test result. See *State* v. *Tomanelli,* 153 Conn. 365, 216 A.2d 625 (1966). When the legislature expressly directs a commission to adopt regulations, those regulations have the force of statutory law. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 497, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). Thus, the regulations here have the force of law and are as much a part of the statute as the statute itself.

the jury might review the requirements "in determining the weight to be given to the test results and the testimony related thereto." Once the trial court had properly admitted the result of the test into evidence, the jury would have no reason to consider the requirements of the statute or the regulations. Those requirements relate to the admissibility of the test as evidence, a function solely in the province of the court. The jury could give the test result whatever weight it chose in its determination of whether the state had proved the defendant guilty beyond a reasonable doubt.

Furthermore, the defendant's request to charge the jury sought simply to request the court to read the statutes and regulations, and was without citation to a substantive principle of law. See Practice Book § 854. The court did not err in refusing to charge the jury as the defendant requested.

### III

The last claim of error asserted by the defendant is that his motions to excuse certain jurors for cause should have been granted because the particular jurors could not be impartial. The defendant had a total of four peremptory challenges. He exercised one peremptory challenge, and then, rather than exercise his second challenge, he moved to exclude for cause a venireperson who testified that his wife's grandmother had been killed by a drunken driver, and that he could remain impartial about the case only if he did not tell his wife about the kind of case he was hearing as a juror. The prospective juror had met his wife's grandmother once and stated that her death had quite an impact on his wife. The court denied the defendant's motion to excuse this venireperson for cause, and the defendant used his second peremptory challenge to excuse him.

The defendant subsequently used his third peremptory challenge to excuse another venireperson, and he

later moved to excuse another venireperson for cause, at which time he had one peremptory challenge left. The court denied the motion and the defendant moved for an additional peremptory challenge. At the time those motions were denied, the defendant still had one challenge left which he failed to exercise. Instead, he allowed that venireperson to serve on the jury panel. The juror he allowed on the panel was the mother of a prosecutor. The prosecutor in this case stated that he knew the juror's son and was friendly with him, but there is no indication that the juror herself knew the prosecutor in this case.

Practice Book § 843 provides that if the judicial authority finds that a person exhibits "any quality which will impair his capacity to serve as a juror," then he shall be disqualified. General Statutes § 54-82f provides then if the trial judge "is of the opinion . . . that any juror would be unable to render a fair and impartial verdict, the juror shall be excused by the judge . . . ."

Unless all peremptory challenges have been exercised before the completion of jury selection, there is a presumption that there is no juror serving who is regarded by the defendant as biased, although the defendant may have preferred other jurors. *State* v. *Mercer,* 208 Conn. 52, 61–62, 544 A.2d 611 (1988); *State* v. *Vitale,* 190 Conn. 219, 225, 460 A.2d 961 (1983). A trial court has discretion as to whether it will excuse a juror for cause. *State* v. *Mercer,* supra. This discretion is a wide one.

In *Johnson* v. *New Britain General Hospital,* 203 Conn. 570, 572, 575, 525 A.2d 1319 (1987), a medical malpractice case, a prospective juror, who was a retired dentist, stated during his voir dire that he had "an antagonism against malpractice suits and awards. . . . My general opinion is that many cases are frivolous. . . . Many awards are exorbitant." Although the

plaintiff had exercised all of his peremptory challenges at the time of the voir dire, it was held that it was not an abuse of discretion for the trial court to refuse to excuse the juror for cause. The assurance by the juror, "I think I would be fair," was deemed to be sufficient assurance that he would be fair and impartial. The plaintiff claimed in *Johnson* that the testimony of the juror indicated actual bias and that the juror should have been disqualified under the common law. The court found that the responses of the juror tended to show bias but did not create a conclusive presumption of bias. It held that under the facts of the case, the juror had indicated that he could lay aside his impression or opinion and render a verdict based on the evidence presented.

We conclude that neither juror in this case showed such prejudice and bias that he or she should have been excused for cause. *State* v. *Mercer,* supra; *Johnson* v. *New Britain General Hospital,* supra; *State* v. *Cubano,* 203 Conn. 81, 88–89, 523 A.2d 495 (1987); see also *United States* v. *Haynes,* 398 F.2d 980 (2d Cir. 1968). Since the defendant need not have accepted the juror who was allowed to sit after the denials of his motions to excuse for cause because he still had a peremptory challenge left, it is all the more apparent that the trial court did not abuse its discretion. *State* v. *Vitale,* supra, 225.

There is no error.

In this opinion the other judges concurred.