STATE OF CONNECTICUT *v.* DAVID GARRITY
(6469)

SPALLONE, STOUGHTON and NORCOTT, Js.

Argued October 20, 1988—decision released January 24, 1989

*Ronald D. Williams, Jr.,* assistant public defender, for the appellant (defendant).

*James Ralls,* deputy assistant state's attorney, with whom, on the brief, were *Susan C. Marks,* assistant state's attorney, and *Warren Murray,* deputy assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant was found guilty, after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes (Rev. to 1985) § 14-227a (a),[1] as amended by Public Acts 1985, No. 85-596. He appeals from the judgment of conviction rendered on the verdict. He claims that the trial court erred (1) in that it refused to suppress the results of alcohol breath tests, and (2) in its instructions to the jury. We find no error.

On May 26, 1986, the defendant was arrested for operating a motor vehicle while under the influence of intoxicating liquor. The state filed a bill of particulars alleging that the ratio of alcohol in the defendant's

---

[1] General Statutes (Rev. to 1985) § 14-227a, as amended by Public Acts 1985, No. 85-596 provides: "(a) No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property . . . (2) while the ratio of alcohol in the blood of such person is .10 of one per cent or more of alcohol, by weight."

blood was .10 percent or more by weight. The defendant moved to suppress the results of his alcohol breath tests.

At the hearing on the motion to suppress, only police officers Ray Moerler and Wayne Herrion testified. From the evidence adduced at the hearing, the trial court could have found the following. On May 26, 1986, Moerler came upon an automobile accident in Norwalk. He observed that the defendant was staggering and swaying, and that there was a strong odor of alcohol on the defendant's breath. He arrested the defendant, took him to police headquarters and advised him of his rights, including his right to remain silent and his right to consult with an attorney. He was advised of his right to refuse a chemical analysis test and of the consequences of refusal to take such a test. The defendant consented to take a test and signed a consent form. He admitted that he had been drinking beer. Moerler recorded his observations of the defendant on an alcohol influence report form. Moerler, who had been trained and certified by the department of health services to conduct chemical tests via the Intoximeter 3000, administered two such tests to the defendant. The first test, performed at 2:56 a.m., produced a reading of .15 percent blood alcohol content (BAC). The second test, at 3:39 a.m., produced a reading of .14 BAC. The Intoximeter 3000 had been checked for accuracy at 12:10 a.m. at the beginning of the workday by Herrion, who had been trained and certified in the use of the machine. The machine was again checked for accuracy at 3:35 a.m. and at 3:43 a.m. The results of the accuracy checks were recorded and kept at the station. The defendant was given a copy of the test results within twenty-four hours of the tests. The trial court denied the defendant's motion to suppress.

At trial, the state also presented testimony that the defendant had been speeding and that, shortly after

the accident, the defendant was disoriented and shaky, with unsteady balance, and that he had limited control of his faculties. In addition, both Moerler and Herrion testified that the defendant was under their observation for at least fifteen minutes prior to each breathalyzer test and that during those times he did not ingest any alcoholic beverages, or food, and that he had neither regurgitated nor smoked.

The defendant testified at trial that on the day of his arrest he had had two beers with lunch and probably only a sandwich for dinner. He claimed that he then went to a bar at 11 p.m. and drank four beers before leaving at 1 a.m. He admitted that he had been driving a little fast that night and that he felt a little high. He claimed that his equilibrium had been affected by a prior accident. His parents also testified to the effects of that accident on their son.

The defendant's first claim is that the trial court erred in refusing to suppress the results of the breathalyzer test. The defendant rests this claim on three different grounds. First, the defendant claims that at the suppression hearing the state never presented any evidence that either Moerler or Herrion had observed the defendant for the fifteen minutes prior to the breathalyzer test as required by General Statutes § 14-227a (e)[2] and the requirements of testing set forth in §§ 14-227a-1 through 14-227a-10 of the Regulations of Connecticut

---

[2] General Statutes § 14-227a (e) provides: "CERTIFICATION OF METHODS AND TYPES OF CHEMICAL TESTS. The commissioner of health services shall ascertain the reliability of each method and type of device offered for chemical testing purposes of blood, of breath and of urine and certify those methods and types which he finds suitable for use in testing blood, testing breath and in testing urine in this state. He shall adopt regulations governing the conduct of chemical tests, the operation and use of chemical test devices and the training, certification and annual recertification of operators of such devices as he finds necessary to protect the health and safety of persons who submit to chemical tests and to insure reasonable accuracy in testing results."

State Agencies. The defendant's claim is that the trial court could not find that Moerler complied with the fifteen minute observation period required by regulation § 14-227a-10 (b) (1) (A)[3] because no such evidence was presented at the suppression hearing. The defendant claims, moreover, that there was no evidence that Moerler had ever been instructed as to this observation period.

At the conclusion of the suppression hearing, the defendant argued that the lack of evidence regarding

[3] Regs., Conn. State Agencies § 14-227a-10 provides in pertinent part: "DIRECT BREATH ALCOHOL ANALYSIS. No person shall be an operator of a breath analysis instrument unless such person is employed by a law enforcement agency or by the department of health services and is certified by the department of health services. Such operator shall conduct the tests according to methods and with equipment certified by said department and shall check the instrument for accuracy at the beginning and no later than the end of each workday shift.

\* \* \*

"(b) METHODS FOR CONDUCTING BREATH ANALYSIS TESTS. Any operator who conducts a breath analysis test shall utilize the following procedures:

"(1) Sample collection.

"(A) The expired breath sample shall be air which is alveolar in composition. The breath sample shall be collected only after the subject has been under continuous observation for at least fifteen minutes prior to the collection of each sample. During this observation period the subject must not have ingested any alcoholic beverages or food, regurgitated, or smoked.

"(B) Sample(s) of the persons breath shall be collected with an instrument approved for this purpose by the department in accordance with subsection (a).

"(2) Operation of instrument.

"(A) The manufacturer's operational instructions shall be followed by operators and shall be available at each instrument location.

"(B) All police agencies are to have their breath analyses instruments made available for examination by the department of health services. A single current log book for the instrument shall be maintained in which the frequency of determination of accuracy of the instrument and the identity of the person performing the determination of such accuracy are given. Breath analyses instruments shall be examined and certified by the department prior to being placed in operation and after being repaired or recalibrated. All test results of each subject's analysis and calibration shall be recorded in the log book maintained by the police agency. This log book shall be made available for examination by the department."

the observation period required that the breath test must be suppressed. The trial court denied the motion to suppress and found that it could infer that the tests were done according to the proper methods. The defendant claims that the trial court erred in drawing this inference (1) because it was unwarranted by the evidence, and (2) because it was impermissible in a criminal case.

At trial, and before the breathalyzer test results were admitted into evidence, Moerler and Herrion repeated the testimony that they had given at the suppression hearing. In addition, they testified that the defendant had been under their observation for at least fifteen minutes prior to the breathalyzer test and that in this period he had neither ingested nor regurgitated anything, nor had he smoked or drunk anything that would have affected the test. This additional evidence came in without objection by the defendant. Furthermore, the defendant did not object when the breath test results were actually entered into evidence at trial. Here, the evidence adduced at trial remedied any suppression hearing deficiencies claimed by the defendant. Since the defendant did not object to introduction of the testimony concerning the observation period; Practice Book § 288; he cannot and does not claim that the trial court lacked the evidence from which to determine that the test results were admissible. See *State* v. *Keeby*, 159 Conn. 201, 202–203, 268 A.2d 652, cert. denied, 400 U.S. 1010, 91 S. Ct. 569, 27 L. Ed. 2d 623 (1971). Therefore this claim lacks merit.

The defendant next claims that the conditions precedent to admission were not met because the police failed to maintain a log book properly, as required by regulation § 14-227a-10 (b) (2) (B),[4] and thus the tests were not performed in accordance with the approved methods

---

[4] See footnote 3, supra.

as required by General Statutes § 14-227a (c) (3).[5] Specifically, the defendant argues that the police did not note in the log book that the breathalyzer machine had been checked for accuracy at the end of the work day. The results, however, were recorded, the records maintained elsewhere and copies of the results were mailed to the defendant.

The defendant does not allege that the accuracy checks were not made, nor does he argue that he was unaware of the accuracy test results or that he was in any way deprived of exculpatory material. See *State v. Scott,* 16 Conn. App. 172, 547 A.2d 77 (1988) (claim that lost log book contained exculpatory evidence). Rather, the defendant simply asserts that General Statutes § 14-227a, as a penal statute must be strictly construed against the state. Therefore, he argues that the regulation requiring that the information be recorded in the log book must be followed exactly in order for the test results to be admissible. We find the test results were properly admitted.

In *State v. Smith,* 16 Conn. App. 156, 547 A.2d 69 (1988), and *State v. Desso,* 16 Conn. App. 165, 168, 547 A.2d 74 (1988), we did not require literal compliance with the "continuous observation" regulation because

---

[5] General Statutes (Rev. to 1985) § 14-227a (c), as amended by Public Acts 1985, No. 85-596, provides in pertinent part: "Except as provided in subsection (d) of this section, in any criminal prosecution for violation of subsection (a) or (b) of this section, evidence respecting the amount of alcohol or drug in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath, blood or urine shall be admissible and competent provided: . . . (3) the test was performed by or at the direction of a police officer according to methods and with equipment approved by the department of health services and was performed by a person certified or recertified for such purpose by said department or recertified by persons certified as instructors by the commissioner of health services. If a blood test is taken, it shall be on a blood sample taken by a person licensed to practice medicine and surgery in this state, a qualified laboratory technician, an emergency medical technician II or a registered nurse . . . ."

such compliance would defeat the purpose of the regulation. Here also we must look to the purpose of regulation § 14-227a-10 (b) (2) (B). The regulation states that "[a]ll test results of each subject's analysis and calibration shall be recorded in the log book maintained by the police agency. This log book shall be made available for examination by the department." This regulation clearly is concerned with providing a record of the test results for the department of health services and is in no way connected with promoting the underlying validity of the test itself. Since the log book requirement at issue cannot be satisfied until *after* the test is completed, it cannot affect the accuracy of the test. Nor can the defendant's position that the log book requirement is an absolute condition precedent for admission be sustained by the language of General Statutes § 14-227a (c) which states "evidence respecting the amount of alcohol or drug in the defendant's blood or urine . . . shall be admissible and competent provided: . . . (3) the *test* was performed by or at the direction of a police officer according to methods and with equipment approved by the department of health services . . . ." (Emphasis added.) The requirement in General Statutes § 14-227a (c) that regulations be followed evinces an interest in promoting the accuracy and reliability of the actual testing process, and not with the recording mechanics. We also note that there is nothing in the language of either the statute or the regulation that mandates a time within which the test results must be recorded in the log book; presumably the results can be recorded anytime after the test is administered. In the absence of any evidence that the legislature intended to make the log book requirement a condition precedent to the admission of a breathalyzer, we find the test results were properly admitted.

The defendant's next claim of error is that the trial court erred in holding that there was sufficient evidence

to show that the test results accurately reflected his blood alcohol content at the time of the offense pursuant to General Statutes § 14-227a (c) (6). The defendant contends that while the test results reflected his blood alcohol content at the time of the testing, they did not reflect the alcohol content at the time of the offense. He also contends that the state failed to produce any evidence to corroborate the test results. We disagree. At trial, the defendant testified that he drank beer earlier in the day and had four beers from 11 p.m. to 1 a.m., and that he felt high. Several witnesses testified that the defendant's behavior was shaky and unsteady. The police administered the test only one hour and forty minutes after the accident and the defendant consumed no additional alcohol during this period. This evidence was sufficient to find that the test results accurately reflected the defendant's blood alcohol level at the time of the offense. See *State* v. *Hancich,* 200 Conn. 615, 623–24, 513 A.2d 638 (1986).

The defendant's final claim[6] is that the trial court improperly instructed the jury that it could consider evidence regarding the defendant's operation of his car and his demeanor after the accident in assessing whether his behavior was consistent with the breathalyzer test results. The defendant claims that the state did not present any evidence from which the jury could infer that the defendant's behavior was consistent with the test results. In fact, the defendant alleges that the evidence produced at trial showed it was impossible to determine a person's blood alcohol content from mere observation. We find no error as to this claim.

[6] The state claims that this claim should not be reviewed because it arises from grounds other than those on which the defendant based his objection. We disagree. The defendant's objection at trial adequately apprised the trial court of the reasons he felt the charge was in error. See *Land Enterprises, Inc.* v. *Dorman,* 17 Conn. App. 4, 10–11, 549 A.2d 672 (1988).

The trial court's instructions clearly informed the jury that it was to use this evidence for the limited purpose of assessing the accuracy of the breathalyzer test results. The court further stated that the jury could not base a guilty verdict on the behavioral evidence, but must find that the test was accurate and reliable, and showed that the defendant's blood alcohol level was greater than .10 percent. These instructions could not reasonably be construed as having misled the jury.

Under General Statutes § 14-227a (a) (2), the trier of fact must find beyond a reasonable doubt that the accused operated a motor vehicle "while the ratio of alcohol in the blood of such person is ten-hundredths of one percent or more by weight." A person is under the influence as a matter of law when his or her blood alcohol content is .10 percent or more. See *State* v. *Hancich,* supra, 620. The jury was fully entitled to use or ignore the defendant's behavior in assessing the accuracy of the test results.

There is no error.

In this opinion the other judges concurred.