STATE OF CONNECTICUT *v.* RICHARD COMOLLO
(7693)

DALY, NORCOTT and FOTI, Js.

Argued December 12, 1989—decision released April 10, 1990

*Christopher W. Bromson,* with whom were *Francis S. Holbrook II* and *Donald G. Leis, Jr.,* for the appellant (defendant).

*Jacqueline J. Footman,* deputy assistant state's attorney, with whom, on the brief, were *John Bailey,* state's attorney, and *Warren Gower,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, after a plea of nolo contendere, pursuant to General Statutes § 54-94a[1] and Practice Book § 4003,[2] of

---

[1] General Statutes § 54-94a governs pleas of nolo contendere and provides: "CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] Practice Book § 4003 provides:

"(a) When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unrea-

operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a).[3] The defendant claims that the court erred in denying his motion to dismiss and his motion to suppress. We find no error.

The facts are as follows. At 2:23 a.m. on March 22, 1987, Officer Steve Madden of the Connecticut state police received a dispatch that a one car accident had occurred on Interstate 84 approximately 200 feet east of exit 56. He arrived at the scene of the accident within minutes after he received the call. He observed an auto-

sonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution. The court shall not accept a nolo contendere plea pursuant to this subsection where the denial of the motion to suppress would not have a significant impact upon the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere plea where the record available for review of the denial of the motion to suppress or motion to dismiss is inadequate for appellate review of the court's determination thereof.

"(b) With the approval of the court, after a hearing to consider any objections thereto, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any motion made prior to the close of evidence, which motion must be specified in such written reservation. If the defendant prevails on appeal, the judgment shall be set aside and the defendant shall be allowed to withdraw the conditional plea of nolo contendere after the case has been remanded to the trial court. The court shall not accept a plea of guilty or nolo contendere pursuant to this subsection where the adverse determination of the specified motion would not have a significant impact on the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere or guilty plea where the record available for review of the ruling upon the specified motion is inadequate for appellate review of the court's determination thereof."

[3] "[General Statutes] Sec. 14-227a. OPERATION WHILE UNDER THE INFLUENCE OF LIQUOR OR DRUG OR WHILE IMPAIRED BY LIQUOR. (a) OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A per-

mobile on the right side of the road, resting against a guardrail in the eastbound lane. The damage to the car was consistent with its striking the guardrail before coming to a stop. The officer also observed that the car was stationary, the motor was not running but the engine compartment was warm. The headlights were off, the keys were not in the ignition, and there was no operator behind the wheel. The officer did not observe any skid marks at the scene and he was unable to locate any additional witnesses to the accident. There were no pedestrians in sight, a fact consistent with the type of highway.

When the officer approached, the defendant was standing next to the vehicle. Although it had been raining, the defendant's clothes were dry, leading Madden to conclude that the defendant had not been out in the rain for any appreciable length of time. Madden asked the defendant if he had been the driver of the car and whether he had been injured. The defendant replied that he was the driver and that he had not been injured. The defendant told the officer that another vehicle had struck his car, forcing him off the highway. At Madden's request, the defendant retrieved his driver's license, registration and insurance information from the vehicle's glove compartment. The registration indicated that the car was owned by General Motors Acceptance Corporation.

As the defendant and Madden spoke, the officer detected a strong odor of alcohol on the defendant's

son commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

breath. During the course of their conversation, the defendant first stated that he was coming home from the movies. He later stated that he had been drinking before he went to the movies. Finally, the defendant stated that he had been drinking at a lounge and restaurant prior to the accident.

The officer administered a field sobriety test that confirmed his suspicions that the defendant was intoxicated. The defendant was arrested and transported to the state police barracks where he consented to an alcohol breath test. The defendant was given two intoximeter tests that morning. The first, administered at 3:31 a.m., resulted in a blood alcohol reading of .191. The second intoximeter test was administered at 4:06 a.m. and showed a blood alcohol reading of .185.

## I

The defendant claims that the court erred in denying his motion to dismiss, which was filed pursuant to General Statutes § 54-56 and Practice Book § 815 (5). He asserts that there was insufficient evidence to warrant a finding that the defendant was operating the motor vehicle. It is the defendant's position that any admission or statement he made at the time of the arrest is inadmissible unless the state first produces sufficient independent corroborative evidence to establish that he was operating the motor vehicle. Specifically, the defendant claims that the state failed to offer sufficient preliminary proof of the corpus delicti of the element of operation to allow his admission to be used by the trier of fact as proof that he was, in fact, the driver of the car. We do not agree.

General Statutes § 14-227a provides that "[n]o person shall operate a motor vehicle while under the influence of intoxicating liquor . . . ." "The state must prove each of the two essential elements of the crime charged [that the defendant was the operator and that

he was under the influence of intoxicating liquor] beyond a reasonable doubt. . . . The court was entitled to draw all fair and reasonable inferences from the facts established by the evidence, but the conclusion based on them must not be the result of speculation and conjecture." (Citations omitted.) *State* v. *DeCoster,* 147 Conn. 502, 504, 162 A.2d 704 (1960).

Although the defendant was not behind the wheel of the car when Madden came upon the scene of the accident, he later told the officer that he was the driver of the car.[4] At common law, a confession of an accused could not be admitted until the *corpus delicti,* or *prima facie* proof that a crime had been committed by someone, was proven by extrinsic evidence. "In [*State* v. *Tillman,* 152 Conn. 15, 20, 202 A.2d 494 (1964), our Supreme Court] adopted Professor Wigmore's definition of the term 'corpus delicti,' and stated: 'The corpus delicti consists of the occurrence of the specific kind of loss or injury embraced in the crime charged.' . . . The confession, then, as evidence tending to prove both the crime charged and the corpus delicti, is not sufficient of itself to prove the former, and without evidence aliunde of facts tending to prove the corpus delicti, is not enough to warrant a conviction. There must be such extrinsic corroborative evidence as will, when viewed in connection with the confession, establish the corpus delicti . . . in the mind of the trier beyond a reasonable doubt." (Citation omitted.) *State* v. *Ruth,* 181 Conn. 187, 198, 435 A.2d 3 (1980). Applying this rule of law to the present case, it was necessary for the state to present sufficient corroborative evidence that, when viewed in connection with the defendant's admission,

---

[4] The defendant's reliance on *State* v. *McDonough,* 129 Conn. 483, 29 A.2d 582 (1942), and *State* v. *DeCoster,* 147 Conn. 502, 162 A.2d 704 (1960), is misplaced. In neither of those cases was an admission of operation made by the defendant.

would lead the trier of fact to conclude, beyond a reasonable doubt, that the defendant was, in fact, operating the vehicle.

While it is true that the trial court here applied an incorrect standard when it neglected to resolve the question of corpus delicti and found that the element of operation was satisfied by viewing only the extrinsic corroborative evidence presented in complete isolation from the defendant's admission of operation,[5] that error was harmless. When we apply the correct standard of law to the facts at hand, and view the extrinsic facts in connection with the defendant's admission, we also conclude that sufficient evidence existed to satisfy the element of operation. In reaching this conclusion we have considered the following: The motor of the car had recently been turned off, as evidenced by the warmth of the car's hood; there were no other individuals within view either walking for assistance or leaving the scene of the accident on foot; the defendant had just been inside the car as evidenced by the dry condition of his clothing on a rainy day; this car was the only one in sight; the defendant knew where to find the car's registration and insurance information and he did not question the officer's interest in his driver's license. Further, although the defendant is correct in his assertion that the car was not registered in his name, it was not registered to another person, but to a corporate entity which is consistent with the

---

[5] Although the trial court's application of an improper standard of law is error, it is harmless error in the present case. An error is only harmful where the erroneous action of the court would have been likely to effect the result of the trial. *State* v. *Ruth,* 181 Conn. 187, 196, 435 A.2d 3 (1980). Here, the trial court's disregard of the defendant's admission of operation and consequent failure to resolve the question of corpus delicti, viewed the evidence presented in a light more favorable to the defendant than the standard we apply. Nonetheless, that court came to the same ultimate conclusion that we reach here, that is, that the element of operation was satisfied.

assumption that it was a vehicle within the defendant's complete control at the time of the accident.

These facts and the defendant's admission must be viewed for their cumulative impact. When they are taken together with the inferences that could reasonably be drawn from them, it becomes clear that the corpus delicti of operation was sufficiently proven for the prosecution to proceed with the proof of its case.

## II

The defendant next claims that the trial court erred in denying his motion to suppress the results of both of the breathalizer tests administered to the defendant.

The facts relevant to this claim are as follows. Officer Madden administered a breathalizer test to the defendant on an Intoximeter 3000, an instrument certified by the department of health services. At the hearing on the defendant's motion to suppress, Madden produced a photocopy of the instrument's certification bearing the signature of Abraham Stolman, chief toxicologist for the state toxicological laboratory. The copy was allowed into evidence, over the defendant's objection that it was not the best evidence. In addition, Madden testified that he himself was certified by the department of health services to administer alcohol breath tests on the Intoximeter 3000 and had performed between fifty and one hundred tests. A photocopy of the officer's recertification was allowed into evidence over the defendant's objections that it too was not the best evidence, that no evidence of the officer's written application to perform such testing had been introduced pursuant to § 14-227a-5 of the Regulations of Connecticut State Agencies[6] and that Madden did

---

[6] Section 14-227a-5 of the Regulations of Connecticut State Agencies provides: "APPLICATION FOR CERTIFICATION TO PERFORM ALCOHOL TESTS

"Application for certification to perform alcohol analyses may be made by the candidate for certification or by his employer. It shall be made in

not personally receive his recertification in writing prior to administering the test to the defendant pursuant to § 14-227a-6 of the Regulations of Connecticut State Agencies.[7]

The defendant's claims with respect to the court's denial of his motion to suppress are twofold. First, the defendant contends that the court erred in allowing photocopies into evidence, and second that the court erred in not suppressing the results of the intoximeter tests because the state failed to comply with department of health regulations §§ 14-227a-5 and 14-227a-6.

## A

The defendant argues that the best evidence rule requires that the state produce duly authenticated originals, or certified copies of the certification and recertification of Madden. We do not agree.

" ' "[I]n proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent." '

---

writing to the commissioner and shall be accompanied by a statement of the training and experience of the candidate."

[7] Section 14-227a-6 of the Regulations of Connecticut State Agencies provides: "GRANTING OF APPROVALS AND CERTIFICATIONS

"No approval or certification shall be effective until the applicant has been informed in writing of such action by the commissioner. Approval or certification may be granted subject to such conditions as the commissioner shall impose or may be denied after review and investigation. A candidate for certification may be required to demonstrate ability to perform and control alcohol analyses or to operate and control analytical devices before certification is granted. Suspension or revocation for cause of approvals or certifications shall be effective upon receipt of written notice of the same from the commissioner. Continuation of approval or of certification shall be subject to review by the commissioner or his agent at any time through evaluation of performance or by investigation of alleged unsatisfactory performance. Approval of a method or methods shall be construed to include approval of the equipment specified therein, subject to proper maintenance. When such equipment includes alcohol test devices as defined herein, they shall be checked and controlled as specified in section 14-227a-8."

*Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 10, 513 A.2d 1218 (1986), quoting C. McCormick, Evidence (3d Ed.) § 230. The best evidence rule typically applies when attempting to prove the contents of ' "instruments such as deeds, wills or contracts, where a slight variation of words may mean a great difference in rights." ' *Brookfield* v. *Candlewood Shores Estates, Inc.,* supra, 10–11, quoting C. McCormick, supra, § 231. The ' "basic premise justifying the rule is the central position which the written word occupies in the law." ' *Brookfield* v. *Candlewood Shores Estates, Inc.,* supra, 10, quoting C. McCormick, supra." *Morales* v. *Saint Francis Hospital & Medical Center,* 9 Conn. App. 379, 382, 519 A.2d 86 (1986), cert. dismissed, 202 Conn. 807, 520 A.2d 1287 (1987).

"In any event, the best evidence rule 'at common law is a preferential, rather than an exclusionary rule.' Comment on Rule 602 Clause (a) of the Model Code of Evidence (American Law Institute) p. 301 . . . ." *Brookfield* v. *Candlewood Shores Estates, Inc.,* supra, 12.

The issues in the present case were, at all times, whether Madden was certified, whether these documents were actually issued, and whether they were properly issued. The specific terms or phrases used in either document were never before the trial court. No claim was made by the defendant that he was unable to examine the documents thoroughly. Likewise, he never sought a continuance in order to perform such an examination to assist him in questioning Madden's certification. The written words contained in each document were not relevant to the issue of whether Madden was actually certified. Copies of the documents in question, accompanied by Madden's testimony, were sufficient to dispose of the remainder of the issues before the court.

The defendant further asserts a claim that the instructor who trained Madden should have been brought in as a witness as a precondition for admitting test results. The defendant can point to no requirement in the law for such a procedure. We conclude that this claim is without merit.

B

The defendant's final claim is that the trial court erred in determining that General Statutes § 14-227a (c) (3) and §§ 14-227a-5 and 14-227a-6 of the Regulations of Connecticut State Agencies had been satisfied. He argues that because General Statutes § 14-227a (c) (3) requires that the direct breath test be performed by a person certified or recertified for that purpose, §§ 14-227a-5 and 14-227a-6 of the regulations must be complied with or the results are not admissible. We do not agree.

We have recently upheld the application of the general requirements of the health service's regulations, together with the statutory requirements of General Statutes § 14-227a (c), as controlling the admissibility of breath tests. *State* v. *Scott,* 16 Conn. App. 172, 547 A.2d 77, cert. denied, 209 Conn. 821, 551 A.2d 758 (1988); *State* v. *Desso,* 16 Conn. App. 165, 547 A.2d 74, cert. denied, 209 Conn. 827, 552 A.2d 433 (1988); *State* v. *Smith,* 16 Conn. App. 156, 547 A.2d 69, cert. denied, 209 Conn. 820, 551 A.2d 758 (1988).[8]

General Statutes § 14-227a (c) provides in part that "evidence respecting the amount of alcohol . . . in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defend-

---

[8] *State* v. *Scott,* 16 Conn. App. 172, 547 A.2d 77 (1988), and *State* v. *Smith,* 16 Conn. App. 156, 547 A.2d 69 (1988), dealt with the reliability of the alcohol measuring device under § 14-227a-8 as performed in laboratories. *State* v. *Desso,* 16 Conn. App. 165, 547 A.2d 74 (1988), held that section 10 had to be complied with as part of the admissibility test.

ant's breath, blood or urine shall be admissible and competent provided . . . . (3) the test was performed by or at the direction of a police officer according to methods and with equipment approved by the department of health services and was performed by a person certified or recertified for such purpose by said department or recertified by persons certified as instructors by the commissioner of health services."

It is not disputed that a person administering an intoximeter test must be certified or recertified for that purpose by the department of health services or recertified by someone certified as an instructor by the commissioner of health services. General Statutes § 14-227a (c) (3). The defendant asserts, however, that the health service regulation requiring that an application for certification to perform alcohol analysis be made in writing and include a statement of the learning and experience of the applicant; Regs., Conn. State Agencies § 14-227a-5; and the health service regulation specifying that approvals and certifications are not effective until the applicant has been informed in writing of the action of the commissioner; Regs., Conn. State Agencies § 14-227a-6; were not satisfied as required by § 14-227a (c) (3). We disagree and conclude that §§ 14-227a-5 and 14-227a-6 of the Regulations of Connecticut State Agencies are not applicable to direct breath alcohol test operators because these operators are regulated exclusively by § 14-227a-10 of the Regulations of Connecticut State Agencies.[9]

The trial court, in a carefully worded and well reasoned memorandum of decision, concluded: "The rule

---

[9] Section 14-227a-10 of the Regulations of Connecticut State Agencies provides: "DIRECT BREATH ALCOHOL ANALYSIS

"No person shall be an operator of a breath analysis instrument unless such person is employed by a law enforcement agency or by the department of health services and is certified by the department of health services. Such operator shall conduct the tests according to methods and with

of strict construction . . . does not require that the most narrow, technical and exact meaning be given to the language of a statute in frustration of an obvious legislative intent. The application of common sense to the language of a penal statute should not be excluded so as to result in absurdity or frustration of the evident design of the legislature." We agree.

equipment certified by said department and shall check the instrument for accuracy at the beginning and no later than the end of each workday or shift.

* * *

"(c) CERTIFICATION OF OPERATORS AND INSTRUCTORS.

"(1) Certification of operators.

"(a) In order to be certified as an operator of a breath analysis instrument, a person shall apply to the department for certification and shall:

"(i) Be employed by a law enforcement agency or by the department of health services;

"(ii) Successfully complete a minimum of four (4) hours of training in the operation of the instrument to be used. Such training may be acquired by training courses given by the department or by instructors certified by the department for such purposes in accordance with subdivision (3) below;

"(iii) Demonstrate to the department the proper use and application of the instrument.

"(B) An operator's certificate shall be valid for twelve (12) months from the date of issuance. The certificate is valid only while the operator is with the particular law enforcement agency for which certification was originally issued.

"(C) Proficiency testing. In order to maintain an operator's certificate, an operator may be required to satisfactorily analyze proficiency test samples provided by the department by using approved direct breath test instruments at periodic intervals.

"(2) Recertification of operator. Each operator shall be recertified at the end of the certification period in accordance with subdivision (1) above.

"(3) Certification of instructors. In order to be certified as an instructor by the department, such person shall

"(A) Be a member of a law enforcement agency or the department and

"(B) Successfully complete a minimum of seven (7) hours of instruction approved by the department on the designated instrument. Such instruction shall include the following:

"(i) The theory of the instruments used in the analytical process which measures alcohol content of the blood;

"(ii) Practical application and experience in the use of the instrument;

"(iii) Presentations, discussions and demonstration of the pharmacological and physiological effects of alcohol in the human body."

The Regulations of Connecticut State Agencies involved herein were amended, effective June 21, 1983, in reaction to *State* v. *Crepeau,* Superior Court, judicial district of New Haven at Meriden, Docket No. MV 7-25228 (May 26, 1983). That decision concluded that the results of breathalizer tests could not be admitted into evidence because the commissioner of health had not complied with the rule making provisions of the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; in approving the use of the Intoximeter 3000. The original regulations that had been in effect since June 27, 1976, ended with § 14-227a-9. The amended regulations added § 14-227a-10 (section 10) entitled "Direct breath alcohol analysis." A plain reading of section 10 leads us to conclude that it was intended to be an exclusive regulation of the administration of direct breath alcohol analyses by law enforcement officers or employees of the department of health services with a machine such as an intoximeter, as opposed to a test conducted in a laboratory by an analyst. Section 10 appears to be a self-contained and exclusive regulation addressing the approval of the test instruments, the conducting of tests, the certification of operators and instructors and the revocation of certification. Moreover, we agree with the finding of the trial court that these provisions are, "in some respects, radically different from similar provisions in the non-Section 10 regulations."

The demarcation between section 10 and the original provisions found in the Regulations of Connecticut State Agencies §§ 14-227a-1 through 14-227a-9 is emphasized in at least two ways by the regulations themselves. First, section 10 is set apart in the definition of the term "laboratory" as set forth in § 14-227a-1 (f), which provides: " 'Laboratory' means any place or area in which any sample of blood, *breath* or urine is subjected to a chemical or instrumental analysis, whether

or not a device or instrument is used. *Places or areas under the jurisdiction of any police agency or organization in which direct breath alcohol analyses are performed and which are covered in Section 14-227a-10 are not considered laboratories for the purposes of these regulations."* (Emphasis added.) Second, section 10 provides for a substantially different certification process for the administrator of the direct breath test, the accuracy of which depends largely on the reliability of the instrument used, as opposed to the certification of a laboratory analyst whose judgment and experience play a major role in determining statutory intoxication. Furthermore, section 10 is controlled by the more general requirement stated in § 14-227a-2 of the Regulations of Connecticut State Agencies.[10] Some of the other regulations dealing with laboratories are not applicable to direct breath tests, by definition.

It is our conclusion that section 10 provides for a process of certification that is substantially different from §§ 14-227a-5 and 14-227a-6 of the regulations. Section 10 is limited to law enforcement officers or employees of the department of health services; it does not require a statement as to training and experience by the applicant; it specifies the exact nature of the training; it limits validity of certification for twelve months; it does not require an application in writing or notice of approval in writing to the operator and provides for a separate process of revocation of certification.

We agree with the trial court's conclusion "that the statutory and regulatory scheme is divided by a bright

[10] Section 14-227a-2 of the Regulations of Connecticut State Agencies provides in pertinent part: "GENERAL REQUIREMENT AND EXEMPTION

"Sections 14-227a-1 to 14-227a-10, inclusive, shall apply to the chemical or instrumental analyses of blood, breath and urine for alcohol when the results thereof may be offered as evidence in a court of law with respect to persons alleged or suspected to have been under the influence of intoxicating liquor while operating a motor vehicle."

line between the certification of analysts whose judgment and experience play a major role in determining statutory intoxication and the certification of direct breath operators where reliance is placed in the accuracy of the machine and not on the education or experience of the operator other than to assure the proper operation of the machine. It was reasonably anticipated by the drafters of the regulations that law enforcement officers would not have a knowledge of science or have previous experience in laboratories. The linchpin to the direct breath tests is the accuracy of the machine not the knowledge or experience of the operator other than minimal training requirements directed to the accurate operation of the machine."

We have recently stated that "[t]he requirement in General Statutes § 14-227a (c) that regulations be followed evinces an interest in promoting the accuracy and reliability of the actual testing process, and not with recording mechanics." *State* v. *Garrity,* 17 Conn. App. 376, 383, 552 A.2d 452 (1989); c.f. *State* v. *Janson,* 20 Conn. App. 348, 352 n.3, 566 A.2d 1377 (1989). In the absence of any evidence that the legislature intended to make the requirements of §§ 14-227a-5 and 14-227a-6 of the Regulations of Connecticut State Agencies a condition precedent to the admission of a breathalizer, we conclude that the test results were properly admitted. We further conclude, as did the trial court, that those regulations are not directed toward guaranteeing the accuracy of the machine in direct breathalizer test cases, and that noncompliance will not result in an exclusion of the results of those tests.

There is no error.

In this opinion the other judges concurred.